UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM J. KELLY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 22-cv-4533 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| MAYOR LORI LIGHTFOOT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff William J. Kelly brings a four-count complaint alleging that defendants Chicago Mayor Lori Lightfoot and Chicago Superintendent of Police David Brown violated his First Amendment and Fourteenth Amendment rights. Before the Court is defendants' motion to dismiss Kelly's complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6) [21]. For the following reasons, the Court grants defendants' motion.

**Background**

Kelly alleges he is a nationally known journalist and that defendants violated his First Amendment and Fourteenth Amendment rights when they revoked his press credentials under false pretenses. He maintains that over the last year, he has regularly attended Mayor Lightfoot's press conferences as a reporter and has asked her hard questions about Chicago's violent crimes. An August 5, 2022 police report attached to Kelly's complaint states that Kelly "became irate and aggressive" and was "yelling at the Mayor" at a press conference on July 19, 2022. The report further states that Kelly followed Mayor Lightfoot's security detail and the Mayor while he continued to yell and insert himself between the security officers to get closer to the Mayor. The report also stated that Kelly "deliberately bumped" one of the officers while he attempted to push past the officer. Kelly then breached the safe zone around the Mayor.

Thereafter, Superintendent Brown revoked Kelly's credentials, stating that his actions on July 19, 2022 were the cause of the revocation, as documented in the police report discussed above. Superintendent Brown cited Chicago Police Department General Order G09-02-01 (the "General Order") as authority for the revocation, as it allows the police superintendent to revoke press credentials for "improper use or abuse."

According to Kelly, Superintendent Brown revoked Kelly's press credentials to prevent him from asking about the Mayor's multiple failures and because his embarrassing questions hurt the Mayor's chances of being re-elected next year. Kelly filed this lawsuit on August 25, 2022, and on September 2, 2022, the Court denied his Rule 65 motion for a temporary restraining order because Kelly had failed to establish his claims had a likelihood of success on the merits. The Court presumes familiarity with the September 2, 2022 Memorandum Opinion and Order.

**Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529, 131 S. Ct. 1289, 179 L. Ed. 2d 233 (2011). When considering dismissal of a complaint, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam). To survive a motion to dismiss, plaintiff must "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "A defendant filing a motion under Rule 12(b)(6) or 12(c) can base its motion on only 'the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to

proper judicial notice.'" *Kuebler v. Vectren Corp.*, 13 F.4th 631, 636 (7th Cir. 2021) (citation omitted).

**Discussion**

*Count I—First Amendment Right to Freedom of the Press*

Kelly alleges that by excluding him from the Mayor's press conferences, defendants have violated his First Amendment right to freedom of the press. "The amount of access to which the government must give the public for First Amendment activities, and the standards by which a court will evaluate limitations on those rights, depends on the nature of the forum at issue." *John K. MacIver Inst. for Pub. Pol'y, Inc. v. Evers*, 994 F.3d 602, 609 (7th Cir. 2021), *cert. denied*, 142 S. Ct. 711, 211 L. Ed. 2d 400 (2021). "Streets, sidewalks and parks, and the quintessential soap box in the public square fall on one end of the spectrum," namely, "the traditional public fora." *Id.*; *see also Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n,* 460 U.S. 37, 45, 103 S. Ct. 948, 74 L. Ed. 2d 794 (1983). The second type of fora—a designated public fora—is public property the government opens to members of the public to use as a place for expressive activity. *Evers*, 994 F.3d at 609. This category includes school board meetings, municipal theaters, and public university meeting facilities. *See Perry Educ. Ass'n*, 460 U.S. at 45. The third category involves non-public fora, "where the government controls public property which is not, by tradition or designation, a forum for public communication and is open only for selective access." *Evers*, 994 F.3d at 609; *see also Lavite v. Dunstan*, 932 F.3d 1020, 1028 (7th Cir. 2019).

Mayor Lightfoot's press conferences fall under the non-public category because the forum is open only for selective access. *See Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,* 473 U.S. 788, 804–06, 105 S. Ct. 3439, 87 L. Ed. 2d 567 (1985). In other words, Mayor Lightfoot's press conferences are open to journalists who meet certain criteria through the issuance of News Media Credentials. *See Evers*, 994 F.3d at 610. As a result, when "the State establishes a limited public forum, the State is not required to and does not allow persons to engage in every type of speech."

3

*Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106, 121 S. Ct. 2093, 150 L. Ed. 2d 151 (2001). Therefore, "[c]ontrol over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Cornelius*, 473 U.S. at 806.

Defendants move to dismiss Count I of the complaint because Kelly's press credentials were revoked pursuant to a reasonable and viewpoint-neutral policy. Kelly responds that the General Order does not provide clear and viewpoint-neutral standards for issuing press credentials, but rather vague language about the revocation of such credentials in violation of the First Amendment. In support, Kelly contrasts the General Order with the criteria under which the Wisconsin Governor's communications department granted access to non-public press conferences in *Evers*. In that case, the communications department consulted a non-exhaustive list of criteria against which it judged applications, giving the most important consideration to neutral criteria. *Evers*, 994 F.3d at 606. The Seventh Circuit held that the factors were reasonable and that "[t]here is nothing inherently viewpoint-based about the[] criteria." *Id.* at 611.

To start, the Court notes an important distinction between the criteria used in *Evers* and the language of the General Order. While the Seventh Circuit assessed criteria applied to the issuance of media access in the former, here the Court must analyze the standards for revocation of press credentials. *See Cornelius*, 473 U.S. at 811 ("The First Amendment does not forbid a viewpoint-neutral exclusion of speakers who would disrupt a nonpublic forum and hinder its effectiveness for its intended purpose."). Even so, that the General Order's revocation criteria do not mirror the *Evers* inclusion criteria is not fatal. Those factors represent just one example of reasonable, viewpoint-neutral criteria. *Id.* at 808 (alteration in original) ("The Government's decision to restrict access to a nonpublic forum need only be *reasonable*; it need not be the most reasonable or the only reasonable limitation."). The General Order's language—"improper use or abuse"—contains no

4

inherently viewpoint-based criteria for revocation of a previously-granted license. Count I is dismissed.

*Count II—First Amendment Viewpoint-Based Retaliation*

In Count II, Kelly alleges that defendants retaliated against him based on the content of his speech in violation of his First Amendment rights. Specifically, Kelly argues defendants revoked his media credentials because he has repeatedly questioned the Mayor about violent crimes in Chicago and that these questions embarrassed her. *See Nieves v. Bartlett*, --- U.S. ----, 139 S. Ct. 1715, 1722, 204 L. Ed. 2d 1 (2019) (citation omitted) ("'[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech."). A First Amendment retaliation claim requires that a plaintiff establish a "'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Id.* (citation omitted). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury." *Id.* That is, the government's motive must be the "but-for cause" of plaintiff's injury. *Id.*

Defendants argue that Kelly's claim fails because he has not sufficiently alleged that Superintendent Brown's revocation of his press credentials served as retaliation for Kelly's questioning of the Mayor. At the pleading stage, Kelly must state factual allegations that "raise the claim above a mere 'speculative level.'" *Bell v. City of Country Club Hills*, 841 F.3d 713, 716 (7th Cir. 2016) (citation omitted). To meet this standard, the plaintiff's complaint must contain "enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the plaintiff's claim. *Twombly*, 550 U.S. at 556.

Kelly's pleadings fail to create a reasonable inference that bridges the gap between the Mayor's alleged retaliatory motive and Kelly's injury. *Hartman v. Moore*, 547 U.S. 250, 262, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (2006) ("[T]he causal connection required here is not merely between the

5

retaliatory animus of one person and that person's own injurious action, but between the retaliatory animus of one person and the action of another."). In the complaint, Kelly merely alleges that "Lightfoot's decision to revoke Kelly's credentials, [ ] was effectuated by Brown…" (Dkt. 1, ¶ 40.) Though he includes numerous questions he asked of the Mayor, which he claims illustrate her alleged animus, he fails to ground his allegations in anything more than speculation.

Rather, Kelly attaches to his complaint Superintendent Brown's letter, which states that his credentials were revoked based on his actions at the July 19, 2022 press conference as detailed in the attached police report. According to that report, at the end of the press conference, Kelly became aggressive and yelled at Mayor Lightfoot to answer his questions. Kelly attaches a video of the events of that day to his complaint to rebut the assertions in the police report. (Dkt. 5.) However, the video confirms the report's statements that Kelly followed the Mayor and tried to get past security who attempted to block Kelly's path to the Mayor while he continued to ask questions.

As currently pled, Kelly's complaint does not allow the Court to make a reasonable inference of a causal connection between the Mayor's alleged retaliatory animus and Superintendent Brown's revocation of his press credentials. The Court dismisses Count II without prejudice. Should Kelly choose to file an amended complaint, he shall do so within fourteen days.

*Count III—Fourteenth Amendment Equal Protection*

In Count III, Kelly alleges that by excluding him from the Mayor's press conferences, defendants have violated his Fourteenth Amendment right to equal protection of the laws. He specifically alleges the Equal Protection Clause requires that all journalists have equal access to information generally available to the news media. Under these allegations, it appears that Kelly is bringing an equal protection "class of one claim" based on the clause's protection "against purely arbitrary government classifications, even when a classification consists of singling out just one

person for different treatment for arbitrary and irrational purposes." *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 588 (7th Cir. 2021) (citation omitted).

Kelly's equal protection claim, however, merely repackages his First Amendment freedom of press claim, in which he alleges he was treated differently than other press members because he exercised his right to free speech. *See Vukadinovich v. Bartels*, 853 F.2d 1387, 1391 (7th Cir. 1988). Meanwhile, in *Evers*, the Seventh Circuit rejected a similar "equal access" argument, recognizing that it was based on cases from other circuits that pre-date the Supreme Court's modern forum analysis in *Cornelius* and *Perry*. *See Evers*, 994 F.3d at 612–13. As the *Evers* decision explains, "[m]embers of the press are routinely excluded from places that other members of the public may not access such as grand jury proceedings, Supreme Court and appellate court conferences, the meetings of other official bodies gathered in executive session, the meetings of private organizations, and non-public crime scenes, among others." *Id.* at 612.

In response to defendants' motion, Kelly again bases his claim on outdated precedent and argues that *Evers* does not apply. Kelly fails to address the equal protection framework as stated in *Evers* and this Court's ruling on his motion for a temporary restraining order. (*See* Dkt. 11, at 6.) Count III is therefore dismissed.

*Count IV—Fourteenth Amendment Procedural Due Process*

Last, Kelly brings a Fourteenth Amendment claim in Count IV alleging defendants violated his procedural due process rights because they did not give him fair notice and consideration before revoking his press credentials. "[T]o determine whether due process requirements apply in the first place," courts "must look to see if the interest is within the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 570–71, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). "Property interests 'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Cage v. Harper*, 42 F.4th

7

734, 738 (7th Cir. 2022) (quoting *Roth*, 408 U.S. at 577). Liberty interests include the right to marry, the right to have children, and the right to bodily integrity, among other interests. *See Sung Park v. Indiana Univ. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012) (citing *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997)).

In response to defendants' motion, Kelly again attempts to rely on *Sherrill v. Knight*, 569 F.2d 124, 128 (D.C. Cir. 1977), for the proposition that defendants denied him procedural due process under the Fourteenth Amendment by revoking his press credentials. As discussed in this Court's prior order (Dkt. 11), Kelly again fails to cite to Seventh Circuit precedent adopting the holding in *Sherrill* and fails to address the Seventh Circuit's adoption of subsequent Supreme Court precedent. Kelly fails to cite to any precedential authority in support of his argument that he has a protected interest. *Citizens Health Corp. v. Sebelius,* 725 F.3d 687, 694 (7th Cir. 2013) ("[T]he threshold question in any due process challenge is whether a protected property or liberty interest actually exists."). Finding he has none, Count IV is dismissed.

**Conclusion**

For the foregoing reasons, the Court grants defendants' motion to dismiss Counts I, III, and IV [21]. Count II is dismissed without prejudice. Should plaintiff choose to file an amended complaint, he shall do so on or before November 8, 2022.

IT IS SO ORDERED.

Date: 10/27/2022

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge